1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
                                    AT SEATTLE
9

10   O.B. WILLIAMS COMPANY,                    CASE NO. C08-1155JLR

11              Plaintiff,                      ORDER ON THIRD-PARTY
                                               DEFENDANTS' MOTIONS FOR
12        v.                                   SUMMARY JUDGMENT

13   S.A. BENDHEIM WEST, INC.,

14              Defendant / Third-Party
                Plaintiff,
15
          v.
16
     CARDINAL LG COMPANY, et al.
17
                Third-Party Defendants.
18

19        This matter comes before the court on the motions for summary judgment filed by

20   Third-Party Defendants Cardinal LG Company and Cardinal Glass Industries, Inc.

21   (collectively, "Cardinal") (Dkt. # 93) and Bent Glass Design, Inc. ("Bent Glass") (Dkt. #

22   88).  Defendant/Third-Party Plaintiff S.A. Bendheim West, Inc. ("Bendheim") opposes

ORDER- 1

both motions (Dkt. ## 101, 102).  Plaintiff O.B. Williams Company ("Williams") filed a memorandum in support of Bendheim's opposition to Cardinal's motion (Dkt. # 104). Having considered the motions, the materials in the record, and all papers filed in support and opposition, and having heard oral argument, the court GRANTS in part and DENIES in part Cardinal's motion for summary judgment (Dkt. # 93), and GRANTS Bent Glass's motion for summary judgment (Dkt. # 88).

## I.   BACKGROUND[1]

### A.   The North Seattle Residence Project

This case arises out of an extensive remodeling of an historic home in North Seattle (the "North Seattle Residence Project" or "NSR").  In the mid-1990s, the owner of the North Seattle Residence hired Krakow Jennings, Inc. ("KJI") as the NSR's general contractor.  (*See* Mar. 2009 Wick Decl. (Dkt. # 38) ¶ 2.)  KJI then hired Williams as a subcontractor to construct and install custom windows and doors.  (*Id.*)  KJI and Williams chose Bendheim to supply specialty glass for the windows and doors.  (Mar. 2010 Wick Decl. (Dkt. # 91) ¶ 4.)  For some of the windows and doors, Bendheim was to supply glass that had been laminated for extra strength.  (Mar. 2009 Wick Decl. ¶ 8, Ex. F; *see* Mar. 2010 Wothe Decl. (Dkt. # 94) ¶ 4.)  The project specifications required the glass to be laminated using a type of polyvinyl butyral ("PVB") sheet laminate having the brand name SAFLEX.  (Mar. 2010 Wick Decl. ¶ 4.)  Williams communicated these

---

[1] The facts that follow are largely undisputed and, where disputed, are viewed in the light most favorable to Bendheim.

1   requirements to Bendheim in the form of typed and hand-written product orders, letters,

2   telephone conversations, and other correspondence from mid-1997 through mid-2001.

3   (*See* Mar. 2009 Wick Decl. at 2-7.)

4           In June 1998, Williams and Bendheim negotiated a ten-year warranty on the

5   laminated glass that Bendheim provided for the NSR.  (Mar. 2009 Jayson Decl. (Dkt. #

6   36) ¶¶ 3-5.)  In relevant part, this warranty states:

7           S.A. Bendheim West warrants its laminated glass products ordered for
        North Seattle Residence project for a period of ten years against de-
8           lamination which materially obstruct [sic] vision through the product.  Such
        warranty is made only to O.B. Williams Company.  This warranty shall not
9           apply to . . . any product which has been subject to accident, negligence (in
        whole or in part of others), alteration, abuse or misuse.
10
            S.A. Bendheim West's sole and exclusive liability and purchaser's sole and
11          exclusive remedy under this warranty shall be limited to replacement of
        defective product F.O.B. the shipping point nearest the installation or, at
12          Bendheim West's sole option, to refund the purchaser's invoice price.

13              This warranty is expressly in lieu of all other warranties, expressed
            or implied, including the warranty of merchantability and fitness for
14              purpose and all other obligations and liabilities on Bendheim West's
            part and Bendheim West neither assumes, nor authorizes any other
15              person to assume for Bendheim West, any other liability in
            connection with sale of the product.  Neither Bendheim West nor
16              any of its authorized representatives shall have responsibility nor
            have any liability for commercial loss, or special, indirect, incidental
17              or consequential damages, or for costs of removal or installation
            including labor costs of the product, defective or otherwise.
18
    (*Id.* Ex. 2 (capitalization altered for readability).)
19
            Bendheim ordered the raw sheets of glass for the NSR from Schott Corporation
20
    ("Schott"), a glass manufacturer in Germany.  (*Id.* ¶ 2.)  Because Bendheim did not have
21

22

ORDER- 3

1   its own lamination capabilities, Bendheim subcontracted the lamination of the glass to

2   two vendors:  Cardinal and Bent Glass.[2]

3          1.      Cardinal Shipments

4          From March 1998 through July 1999, Bendheim contracted with Cardinal to

5   laminate and cut the glass for the NSR.  (*See generally* Mar. 2010 Wothe Decl.)

6   Bendheim had Schott ship the raw glass sheets directly to Cardinal.  (*Id.* ¶ 5.)  Cardinal

7   laminated the glass and cut it into "lites" sized to fit into specific windows and doors at

8   the NSR.  (*Id.*; *see id.* Ex. D (Cardinal invoices showing the sizes of lites ordered).)  After

9   Cardinal laminated and cut the glass, it shipped the lites to Bendheim, which forwarded

10  them to Williams.  (*Id.* ¶ 9.) When Williams received the lites, it visually inspected them

11  and then installed them at the NSR.  (Mar. 2009 Wick Decl. ¶ 36.)  Although Cardinal

12  provided lites that were precut for specific windows and doors at the NSR, Williams

13  sometimes "shuffled" glass from one window to another or had lites recut by other

14  vendors before installing them.  (June 2009 Patterson Decl. (Dkt. # 50) Ex. B ("Wick

15  Dep.") 132:14-136:24, 188:3-190:21; Mar. 2010 Wick Decl. ¶ 5.)

16         On June 22, 1998, Bendheim and Cardinal adopted a ten-year warranty that is

17  nearly identical to the warranty Bendheim provided to Williams.  (Mar. 2009 Jayson

18

_____

19      [2] Cardinal contends that an "unknown" third supplier provided additional glass which
    was laminated with liquid resin laminate.  (Cardinal Mot. at 7 (citing Mar. 2009 Wick Decl. ¶ 6;
20  March 2010 Wothe Decl. ¶ 17 & Ex. E).)  Cardinal relies upon a stack of documents which its
    plant manager, Michael Wothe, states he obtained from David Wick, Williams's president.  (*Id.*)
21  Cardinal does not explain how the documents relate to one another or how they support its
    contention.  These unexplained documents do not establish an absence of a material fact
22  regarding the provenance of the liquid-resin-laminated glass, particularly where Bendheim
    asserts that it obtained laminated glass for the NSR only from Cardinal and Bent Glass.

1   Decl. ¶¶ 4-5.)  The two warranties differ only in that "Cardinal" is substituted for "S.A.

2   Bendheim West," and "S.A. Bendheim West" is substituted for "Williams."  (*Compare*

3   *id.* Ex. 2 *with id.* Ex. 3.[3])  According to Donald Jayson, a principal of Bendheim,

4   Bendheim and Cardinal fashioned their warranty so that, if a defect was found in the

5   laminated glass, Bendheim could "expect that Cardinal would resolve the issue through

6   its warranty."  (June 2009 Jayson Decl. (Dkt. # 53) ¶ 3.)

7          When it inspected Cardinal's initial shipments of glass, Williams found that some

8   of the lites were missing and others were broken.  (*See* Mar. 2009 Wick Decl. ¶¶ 17-26.)

9   Bendheim and Cardinal replaced the missing or damaged lites.  (Mar. 2009 Jayson Decl.

10   ¶ 5; Mar. 2010 Wothe Decl. ¶ 10.)  Aside from these initial problems, Cardinal's glass

11   passed Williams's visual inspection.  (*See* Mar. 2009 Wick Decl. ¶ 36.)  Cardinal

12   provided its last shipment of glass for the NSR on July 7, 1999.  (Mar. 2010 Wothe Decl.

13   ¶ 10.)

14          2.   Bent Glass Shipments

15          From December 1999 through May 2001, Bendheim contracted with Bent Glass to

16   laminate the glass for the NSR.  (Mar. 2010 Lerner Decl. (Dkt. # 90) ¶¶ 7-15.)  Bent

17   _____

18          [3] For example, the first paragraph of the Cardinal-Bendheim warranty states:

19   CARDINAL LG (CARDINAL) warrants its laminated glass products ordered for
     S.A. Bendheim's North Seattle Residence project for a period of ten years against
     delamination which materially obstruct [sic] vision through the product.  Such

20   warranty is made only to S.A. Bendheim West. Inc.  This warranty shall not apply
     to . . . any product which has been subject to accident, negligence . . . , alteration,

21   abuse or misuse.

22   (*Id.* Ex. 3.)

ORDER- 5

1   Glass laminated the glass sheets, but, unlike Cardinal, it did not cut the glass into lites.

2   (*Id.* ¶ 4; April 2010 Jayson Decl. (Dkt. # 98) ¶ 12.)  Instead, Bent Glass shipped the

3   laminated glass sheets directly to Williams, which inspected them and had them cut into

4   lites.  (Mar. 2010 Wick Decl. ¶ 6.)  Bent Glass provided its last shipment of glass on May

5   9, 2001.  (Mar. 2010 Lerner Decl. ¶ 15.)

6          Bendheim and Bent Glass did not negotiate a specific warranty for the glass used

7   in the NSR; instead, they used Bent Glass's standard one-year limited warranty, which

8   Bent Glass had provided to Bendheim in "hundreds" of prior orders.  (*Id.* ¶¶ 7, 9.)

9   According to Bent Glass's president, Steven Lerner, Bendheim did not seek an extension

10  of the one-year warranty term for the NSR, and Bent Glass was not aware of Bendheim's

11  ten-year warranty to Williams.  (*Id.* ¶ 9.)  Thus, Bent Glass's warranty to Bendheim did

12  not mirror Bendheim's warranty to Williams.  Bent Glass's warranty provided as follows:

13          Bent Glass Design, Inc. warrants its laminated glass products for a period
            of one (1) year from date of manufacture against defects in material or
14          workmanship, which result in edge separation, let-goes, or delamination.  In
            the event of a failure of any product, Bent Glass Design, Inc. may supply a
15          comparable product, no charge, F.O.B. nearest common carrier terminal to
            place of installation, or Bent Glass Design, Inc. may, at its option, refund
16          the original purchase price paid to Bent Glass Design, Inc. for the product.
            This warranty shall be the purchaser's sole and exclusive remedy for any
17          failure, including any failure resulting from negligence on the part of Bent
            Glass Design, Inc. its suppliers or employees . . . . Bent Glass Design, Inc.
18          will not pay nor give credit for any incidental, special or consequential
            damage or injury to person or property, or any other expenses resulting
19          from such failure.

20  (*Id.* Ex. A.)

21          In total, Bent Glass supplied about 15 percent of the laminated glass used at the

22  NSR, as measured in square feet.  (Mar. 2010 Wick Decl. ¶ 10.)  Although the parties

ORDER- 6

1   have tried to determine which lites originated from each company, they have so far been

2   unable to do so, in part because Williams recut and mixed the glass.  (*See* Wick Dep.

3   132:14-136:24, 188:3-190:21 (discussing recutting and "shuffling" of lites).)

4   **B.      Identification of the Delaminaton and Liquid Resin Laminate Problems**

5            On July 13, 2004, KJI sent a letter to Williams to notify it that some of the lites

6   that it had installed at the NSR were delaminating.  This letter states, in relevant part:

7            [W]e have noticed delamination occurring on some of the Bendheim glass
         panes in the windows, doors, transoms, and sidelights that [Williams]
8            provided for the NSR Project.  [KJI] has performed a "survey" of its own in
         an effort to determine the magnitude of the problem, but we are anxious for
9            [Williams] to review this issue with us as well.

10  (Mar. 2009 Jayson Decl. Ex. 5.)  On October 14, 2004, Williams sent a letter to

11  Bendheim to notify it of the delamination problem.  This letter states, in relevant part:

12           We have been contracted by [KJI] . . . and have been advised that there is a
         delamination glass issue at NSR.  The delamination is apparently occurring
13           on glass panes supplied by you. . . .  The preliminary estimate is that, so far,
         there are roughly eighty lites that have exhibited defects to some
14           degree. . . .  [KJI] wants a plan which is acceptable to the Owners and [KJI]
         for remedying the delaminating glass problem.

15  (June 2009 Patterson Decl. Ex. A ("Quick Dep.") Ex. 69.)  On June 14, 2005, Bendheim

16  sent a letter to Williams in which it acknowledged the delamination problem.  This letter

17  states, in relevant part:

18           The samples of laminated Circa 1900 glass you supplied to us from your
19           North Seattle Residence job have been examined by us and shown to be
         defective.  We were unable to discover a cause of the problem which
20           occurred on this job but there is no reason to believe that additional pieces
         will be affected in the future.  We will replace all the currently defective
21           pieces under the terms of our warranty.

22

ORDER- 7

1 (Mar. 2009 Wick Decl. ¶ 38 & Ex. II.)  As of May 2006, KJI identified 657 lites that had

2 delaminated.  (Mar. 2009 Jayson Decl. Ex. 7 at 7.)  KJI estimated that replacing only the

3 delaminating lites would cost an average of $21.19 per lite, plus freight, in addition to

4 $146,626.45 in labor.  (*Id.*)  According to Williams, however, it was likely that all of the

5 lites—laminated and non-laminated—would need to be replaced in order to ensure that

6 the windows and doors at the NSR continued to match.  (*Id.*)

7       On November 20, 2006, Williams, Bendheim, Cardinal, and the NSR owners'

8 representative met so that the parties could inspect the delaminating glass.  (Mar. 2009

9 Wick Decl. ¶ 39.)  After that meeting, Williams provided sample glass from the NSR to

10 Cardinal and later to Seal Laboratories ("Seal"), an independent company.  (*Id.* ¶¶ 39-40.)

11 Testing by both Cardinal and Seal confirmed the delamination problem.  (*Id.*)  Seal's

12 tests, memorialized in a report dated August 22, 2008, also revealed that some of the

13 defective glass was laminated with liquid resin, despite KJI's requirement that the glass

14 be laminated with PVB sheet laminate.  (*Id.* ¶¶ 40-41 & Ex. JJ.)  The lites laminated with

15 liquid resin had clear tape on the perimeter of the glass which served as a dam to contain

16 the liquid resin.  (*Id.* ¶ 40.)  According to David Wick, president of Williams, Williams

17 would not have been able to detect the presence of the clear tape and the use of liquid

18 resin on inspection in normal light.  (*Id.*)  Williams provided Seal's report to Bendheim

19 on October 7, 2008.  (*See* Apr. 2010 Rosenberg Decl. (Dkt. # 99) Ex. 5.)

20       Additional testing performed in January 2010 confirmed that more than 70 of the

21 2,220 lites installed at the NSR contain liquid resin laminate.  (April 2010 Chamberlain

22 Decl. (Dkt. # 100) ¶ 7.)

1   **C.      Procedural Background**

2       On June 20, 2008, Williams filed its lawsuit against Bendheim in King County

3   Superior Court.  (Williams Compl. (Dkt. # 1 at 3-5).)  Williams alleged that Bendheim

4   breached its contracts with Williams by supplying glass that did not comply with the

5   NSR's requirements and that Bendheim breached its warranty to Williams by not

6   replacing the delaminating lites.  (*Id.* ¶¶ 3.5-3.6.)

7       On August 1, 2008, Bendheim removed the case to this court based on diversity

8   jurisdiction.  (Not. of Removal (Dkt. # 1 at 1-2).)  On September 2, 2008, Bendheim filed

9   a motion to dismiss for lack of personal jurisdiction (Dkt. # 7), which this court denied on

10   October 24, 2008 (Dkt. # 15).

11       On November 17, 2008, Bendheim filed a third-party complaint against Cardinal

12   (Dkt. # 18), which it amended on December 31, 2008 (Am. 3d-Party Compl. (Dkt. # 30)).

13   On August 5, 2009, Bendheim again amended its complaint to join Bent Glass as a third-

14   party defendant.  (2d Am. 3d-Party Compl. (Dkt. # 68).)  Bendheim asserts claims for

15   breach of contract, breach of warranty, and "all forms of indemnity and contribution"

16   against both Cardinal and Bent Glass.  (*Id.* ¶¶ 22-30.)

17       On March 4, 2009, Bendheim filed a motion for partial summary judgment against

18   Williams.  (Bendheim Mot. (Dkt # 35).)  Bendheim contended that Williams's claims

19   were barred by the statute of limitations, and that, in the alternative, Williams was limited

20   to the remedies provided in the warranty agreement.  (*See generally* Bendheim Mot.)  On

21   April 29, 2009, the court denied Bendheim's motion.  (Prior Order (Dkt. # 46).)  The

22   court held that, because Bendheim's warranty to Williams was governed by the UCC and

1  extended to the future performance of the glass, Williams's cause of action for breach of

2  warranty "accrued when it discovered, or should have discovered, that the coating on the

3  glass was delaminating." (*Id.* at 6-7.)  As a result, Williams's claims were not time-

4  barred. (*Id.*)  The court also denied Bendheim's motion for summary judgment on

5  limitation of remedies because there were genuine issues of material fact regarding

6  whether the delamination was caused by the use of non-SAFLEX laminate and whether

7  the term "laminated glass products ordered" in Bendheim's limited warranty referred to

8  laminated glass in general or specifically to glass laminated with SAFLEX.  (*Id.* at 8-9.)

9          On March 11, 2010, Bent Glass filed its motion for summary judgment.  On

10  March 18, 2010, Cardinal filed its motion.  On April 4, 2010, Bendheim filed responses

11  to both motions and moved for a continuance of the motions pursuant to Federal Rule of

12  Civil Procedure 56(f).  On April 8, 2010, Williams filed a memorandum in support of

13  Bendheim's response to Cardinal's motion.  On May 14, 2010, the court heard oral

14  argument on the motions for summary judgment.  (*See* Dkt. # 109.)  In light of the

15  representation by counsel for Bendheim that certain discovery that was the subject of its

16  Rule 56(f) motion had been completed, the court granted Bendheim's Rule 56(f) motion

17  and ordered the parties to provide supplemental briefing regarding "the effect, if any, of

18  recent discovery on the pending motions for summary judgment." (Dkt. # 110.)  The

19  parties completed their supplemental briefing on June 4, 2010.

20

21

22

1      # II.   ANALYSIS

2      **A.      Summary Judgment Standard**

3              Summary judgment is appropriate if "the pleadings, the discovery and disclosure

4      materials on file, and any affidavits," when viewed in the light most favorable to the non-

5      moving party, "show that there is no genuine issue as to any material fact and that the

6      movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex*

7      *Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d

8      652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is

9      no genuine issue of material fact and that he or she is entitled to prevail as a matter of

10     law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-

11     moving party "must make a showing sufficient to establish a genuine dispute of material

12     fact regarding the existence of the essential elements of his case that he must prove at

13     trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.  The non-

14     moving party "must present affirmative evidence to make this showing."  *Id*.

15     Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of

16     material fact exist are insufficient," and a mere scintilla of evidence supporting a party's

17     position is also inadequate.  *Id*.

18     **B.      Preliminary Matters Regarding Supplemental Briefing**

19              At the outset, the court addresses the parties' supplemental briefing.  The court

20     granted Bendheim's motion for a Rule 56(f) continuance based on Bendheim's counsel's

21     representation that new discovery would be relevant to the instant motions.  Specifically,

22     counsel stated that the parties had deposed Mr. Lerner and performed additional physical

1   testing of the glass.  (Hr'g Tr. 3:19-4:16, May 14, 2010 (Dkt. # 116).)  Accordingly, the

2   court ordered the parties "to provide supplemental briefing regarding the effect, if any, of

3   recent discovery on the pending motions for summary judgment."  (Dkt. # 110.)

4        With its supplemental brief, Bendheim submitted the Second Declaration of Henry

5   Chamberlain, which discusses his conclusion, based on his testing of the glass and his

6   interpretation of Mr. Lerner's deposition testimony, that it was more likely than not that

7   Bent Glass, rather than Cardinal, provided the glass laminated with liquid resin.  (May

8   2010 Chamberlain Decl. (Dkt. # 113) ¶¶ 3-9 (stating that the test results were consistent

9   with the use of Uvekol laminating resin and that only Bent Glass was known to have used

10  Uvekol during the relevant time period).)  Bendheim also submitted excerpts from Mr.

11  Lerner's May 11, 2010 deposition.  (Supp. Rosenberg Decl. (Dkt. # 114) Ex. 1.)

12       The bulk of Bendheim's supplemental brief, however, presents legal arguments

13  regarding Bendheim's claims for contribution and indemnity and its request that the court

14  amend its Prior Order denying its motion for summary judgment.  (Bendheim Supp. Br.

15  (Dkt. # 112) at 3-5.)  These sections of the brief are not responsive to the court's order to

16  address "the effect, if any, of recent discovery on the pending motions for summary

17  judgment."  The court does not, therefore, consider these sections of Bendheim's

18  supplemental brief in evaluating the instant motions, nor does it consider Cardinal's and

19  Bent Glass's responses to these sections of Bendheim's supplemental brief.

20  **C.     Breach of Contract and Breach of Warranty Claims**

21       Bendheim's breach of contract claims are based on the provision of glass

22  laminated with liquid resin rather than with PVB laminate.  (Hr'g Tr. 14:11-15, 15:6-7,

1  May 14, 2010.)  Its warranty claims are based on the delamination of the lites following

2  installation at the NSR.  (*Id.* 15:16-17; 2d Am. 3d-Party Compl. ¶¶ 22-24).

3       1.    <u>Breach of Contract Claim against Cardinal</u>

4       At the outset, the court addresses Bendheim's breach of contract claim against

5  Cardinal.  Bendheim alleged in its complaint that "Cardinal and/or Bent Glass" breached

6  their contracts with Bendheim by failing to supply "acceptable laminated specialty glass."

7  (2d Am. 3d-Party Compl. ¶¶ 25-27.)  Bendheim has since narrowed this claim.  First,

8  Bendheim represented at oral argument that its breach of contract claim is limited to the

9  70 lites which were shown to have been laminated using liquid resin laminate rather than

10  PVB sheet laminate.  (H'rg Tr. 17:9-17, May 14, 2010.)  Bendheim further represented in

11  its supplemental briefing that recent testing of the laminate used in the nonconforming

12  lites indicates that the glass laminated with liquid resin must have been supplied by Bent

13  Glass.  (Bendheim Supp. Br. at 1-2 ("the evidence is now compelling that [Bent Glass]

14  provided the glass laminated with liquid resin laminate ultimately installed in the NSR");

15  May 2010 Chamberlain Decl. ¶¶ 6-9.)  Because Bendheim has limited its breach of

16  contract claim to lites which it contends were provided by Bent Glass, the court grants

17  Cardinal's motion for summary judgment on Bendheim's breach of contract claim.

18       2.    <u>UCC Statutes of Limitations</u>

19       The parties dispute whether the contracts at issue in the instant motions are

20  governed by Washington's Uniform Commercial Code ("UCC").  The UCC applies to

21  contracts for the sale of goods and to mixed contracts for the sale of goods and services if

22  the sale of goods predominates over the sale of services.  *Tacoma Athletic Club, Inc. v.*

1   *Indoor Comfort Sys., Inc.*, 902 P.2d 175, 178-79 (Wash. Ct. App. 1995).  The UCC does

2   not apply to contracts for the sale of services or to mixed contracts in which the sale of

3   services predominates over the sale of goods.  *Id.*

4          Cardinal contends that the UCC does not apply to the instant case because it sold

5   lamination services to Bendheim.  (Cardinal Mot. at 10.)  In response, Bendheim argues

6   that the laminated glass—or at least the laminate—was a good, making the contract

7   subject to the UCC.[4]  (Resp. to Cardinal Mot. at 9-12.)  Bent Glass does not take a

8   position on whether the UCC applies, but, rather, argues that Bendheim's claims are

9   time-barred regardless of which statute of limitations applies.  In general, where there is

10  an issue of material fact regarding whether the contract involves predominately goods or

11  services, the issue must be resolved by the trier of fact.  *See Tacoma Athletic Club*, 902

12  P.2d at 179.  Here, however, the court may decide the motion for summary judgment

13  because, regardless of whether the UCC applies, Bendheim's claims for breach of

14  contract against Bent Glass and for breach of warranty against both Cardinal and Bent

15  Glass are time-barred.

16          a.      *Breach of Contract Claim against Bent Glass*

17          Under Washington's UCC, "[a]n action for breach of any contract for sale must be

18  commenced within four years after the cause of action has accrued."  RCW 62A.2-

19  725(1).  A cause of action for a breach of contract claim "accrues when the breach

20  _____

21      [4] Bendheim moves to strike portions of Cardinal's motion and accompanying declaration
    which discuss whether Bendheim retained title to the glass while Cardinal laminated and cut it.
    (Resp. to Cardinal Mot. at 9 n.3.)  The court reaches the conclusions herein without considering
22  whether Bendheim retained title to the glass.

ORDER- 14

1   occurs, regardless of the aggrieved party's lack of knowledge of the breach."  RCW

2   62A.2-725(2).  A breach occurs when the goods do not conform to the contract.  *See*

3   RCW 62A.2-607.  Because the nonconforming aspect of the goods is present when goods

4   are delivered, a breach of contract claim under the UCC generally accrues on delivery.

5   *See Holbrook, Inc. v. Link-Belt Constr. Equip. Co.*, 12 P.3d 638, 641 (Wash. Ct. App.

6   2000).

7        Here, if Bendheim's breach of contract claim against Bent Glass is governed by

8   the UCC, it is barred by the statute of limitations.  Bendheim's breach of contract claim

9   accrued when Bent Glass delivered the allegedly nonconforming glass to the NSR.  As a

10  result, Bendheim's breach of contract claim against Bent Glass accrued no later than May

11  9, 2001, and the UCC's statute of limitations expired four years later, in May 2005.

12  Because Bendheim did not sue Bent Glass until August 2009, its breach of contract claim

13  against Bent Glass is time-barred.

14       Bendheim contends that its breach of contract claim is not barred under the UCC

15  because it did not discover that Williams was asserting a claim for breach of contract

16  based on the presence of liquid resin laminate until Williams filed its lawsuit.  Bendheim,

17  however, cites to no authority showing that a discovery rule applies to a UCC breach of

18  contract claim based on the delivery of nonconforming goods.  Even if it had, it is

19  undisputed that Bendheim was aware of the delamination problem in 2004.  Bendheim

20  provides no justification for its delay in inquiring into why the lites were delaminating or

21  in filing suit against its own vendors after it learned of the possibility of a breach.

22  Bendheim's breach of contract claim is therefore barred under the UCC.

ORDER- 15

1

              b.    *Breach of Warranty Claims*

2

       The statute of limitations for a breach of warranty claim is "four years after the

3 cause of action has accrued."  RCW 62A.2-725(1).  When a breach of warranty cause of

4 action accrues depends upon whether the warranty is one for repair or replacement or

5 whether the warranty extends to the future performance of the goods:

6
> A breach of warranty occurs when tender of delivery is made, except that
> where a warranty explicitly extends to future performance of the goods and

7
> discovery of the breach must await the time of such performance the cause
> of action accrues when the breach is or should have been discovered.

8
RCW 62A.2-725(2).  To come within the future performance exception to the four-year

9 limitations period, the warranty must explicitly promise or guarantee the future

10 performance of the goods.  *See Holbrook*, 12 P.3d at 642 (quoting *Crouch v. Gen. Elec.*

11 *Co.*, 699 F. Supp. 585, 593 (S.D. Miss. 1988)).

12

       Here, if Bendheim's breach of warranty claims based on the delamination of the

13 glass are governed by the UCC, they are barred by the statute of limitations.  Bendheim

14 conceded at oral argument that it was aware of the delamination problem in 2004, after

15 Williams notified Bendheim that the glass at the NSR was delaminating.  (Hr'g Tr.

16 16:18-17:6, May 14, 2010.)  Thus, viewing the evidence in the light most favorable to

17 Bendheim, the court concludes that Bendheim's breach of warranty claims accrued, at the

18 latest, in October 2004, when Bendheim discovered that the glass was delaminating.  As

19 a result, the statute of limitations for Bendheim's claims for breach of the warranty of

20 future performance expired four years later, in October 2008.  *See* RCW 62A.2-725(2).

21

22

ORDER- 16

1    Because Bendheim did not sue Cardinal until November 2008, and did not sue Bent

2    Glass until August 2009, its claims for breach of warranty are time-barred.

3           Further, with respect to Bent Glass, the court notes that Bent Glass's warranty

4    "warrants its laminated glass products for a period of one (1) year from date of

5    manufacture against defects in material or workmanship, which result in edge separation,

6    let-goes, or delamination."  (Lerner Decl. Ex. A.)  Even if the warranty is construed to be

7    one for future performance, it warrants the performance of the glass for only one year

8    from the date of manufacture, as compared to Cardinal's warranty, which extended for

9    ten years.  As a result, any cause of action under Bent Glass's warranty could accrue no

10   later than one year from the date of manufacture of its latest shipment of glass.

11   Bendheim has presented no evidence supporting a finding that any of the glass

12   delaminated within one year of the date of manufacture of the glass.

13          Bendheim makes two chief arguments in response to Cardinal's and Bent Glass's

14   motions.  Neither is convincing.  First, Bendheim contends that its cause of action for

15   breach of warranty accrued in 2008, when the Seal report revealed that liquid resin

16   laminate was used in some of the lites.  Bendheim, however, bases this argument on a

17   misinterpretation of the court's Prior Order.  The court found that because Bendheim's

18   warranty was for future performance and not a warranty to repair and replace, Williams's

19   "cause of action accrued when it discovered, or should have discovered, *that the coating*

20   *on the glass was delaminating*"—not when Williams discovered or should have

21   discovered that non-SAFLEX lamination was used.  (Prior Order at 7 (emphasis added).)

22

1   Second, Bendheim argues that the court cannot dismiss its breach of warranty

2   claims against Cardinal and Bent Glass because the court did not grant its motion for

3   summary judgment on Williams's breach of warranty claims against Bendheim.

4   Bendheim fails to recognize, however, that the timeline pertaining to its claims against

5   Cardinal and Bent Glass differs from the timeline pertaining to Williams's claims against

6   Bendheim.  Williams presented undisputed evidence in its response to Bendheim's prior

7   motion for partial summary judgment that it discovered Bendheim's breach of warranty

8   in July 2004, when KJI first notified Williams about the delamination problem.  (*See*

9   March 2009 Wick Decl. Ex. HH.)  Williams then filed its lawsuit against Bendheim on

10   June 20, 2008, shortly before the UCC's four-year statute of limitations expired.  Here,

11   by contrast, Bendheim concedes that it learned of the delaminating glass in 2004, but,

12   nevertheless, it waited for more than four years to sue Cardinal and Bent Glass.  Because

13   Bendheim delayed in bringing suit, its breach of warranty claims are time-barred under

14   the UCC even though the court found, viewing the evidence in the light most favorable to

15   Williams, that Williams's claims were not barred.

16        3.    Statutes of Limitations under RCW 4.16.080

17        If the UCC does not apply to Bendheim's claims, then Washington's general

18   statutes of limitations for contract claims will apply.  An action based on the breach of a

19   contract that is partly oral and partly written must be brought within three years.  RCW

20   4.16.080(3); *Bogle & Gates, P.L.L.C. v. Holly Mountain Res.*, 32 P.3d 1002, 1004 (Wash.

21   Ct. App. 2001).  Here, Bendheim did not dispute Cardinal's and Bent Glass's arguments

22

that the contracts at issue were partly oral and partly written.[5]  Thus, if the contracts are

not governed by the UCC, the three-year statute of limitations under RCW 4.16.080(3)

will apply.  A cause of action for breach of contract generally accrues on breach

regardless of when the plaintiff discovers it.  *1000 Virginia Ltd. P'ship v. Vertecs Corp*,

146 P.3d 423, 428 (Wash. 2006).

The court finds, viewing the evidence in the light most favorable to Bendheim,

that Bendheim's cause of action against Cardinal under RCW 4.16.080(3) accrued, at the

latest, on July 7, 1999, when Cardinal delivered its last shipment of glass for the NSR.

The statute of limitations expired three years later, in July 2002, before Bendheim sued

Cardinal in November 2008.  Similarly, Bendheim's cause of action against Bent Glass

under RCW 4.16.080(3) accrued, at the latest, on May 9, 2001, when Bent Glass

delivered its last shipment of glass for the NSR.  The statute of limitations expired three

years later, in May 2004, before Bendheim sued Bent Glass in August 2009.

Bendheim contends that the discovery rule applies and that it did not discover a

cause of action based on the presence of liquid resin laminate until October 2008.  The

---

[5] Bendheim did not dispute in its responses or at oral argument that the contracts at issue were partly oral and partly written.  Rather, Bendheim contended that if the court granted Cardinal's and Bent Glass's motions on the ground that a three-year statute of limitations applied, it should also grant its motion for summary judgment against Williams on the same ground.  (*See* Cardinal Mot. at 10; Resp. to Cardinal Mot. at 15; Bent Glass Mot. at 10; Resp. to Bent Glass Mot. at 16-17; Sonkin Decl. (Dkt. # 89) Ex. C at 7; Hr'g Tr. 17:19-24, May 14. 2010.)  In its supplemental briefing, however, Bendheim changes its approach and contends that it entered into written contracts with Bent Glass.  The court notes that these arguments are based on evidence that was in the record when Bendheim responded to Bent Glass's motion.  (*See* Bendheim Supp. Br. at 4 (citing Mar. 2010 Lerner Decl.).)  Thus, the arguments are beyond the scope of the court's order to discuss the effect of recent discovery on the instant motions and will be disregarded.

1    Washington Supreme Court, however, has strictly limited the application of the discovery

2    rule in breach of contract actions.  In *1000 Virginia*, the Court held that the Washington

3    Court of Appeals lacked authority to extend the discovery rule to a breach of contract

4    action, but nevertheless applied the discovery rule to "actions for breach of construction

5    contracts where latent defects are alleged."  *1000 Virginia*, 146 P.3d at 430-31.  As no

6    party here contends that the contracts at issue were construction contracts, the court

7    declines to apply the discovery rule to this case.  Even if the discovery rule applied,

8    however, the Washington Supreme Court has made clear that a "person who has notice of

9    facts that are sufficient to put him or her upon inquiry notice is deemed to have notice of

10   all facts that reasonable inquiry would disclose."  *Id.* at 431.  As Bendheim concedes that

11   it had notice of the delamination problem in October 2004, its cause of action would have

12   accrued at that time, and the three-year statute of limitations would have run in October

13   2007, before Bendheim filed its suit against Bent Glass.

14          For the above reasons, viewing the evidence in the light most favorable to

15   Bendheim, the court finds that Bendheim's breach of contract and breach of warranty

16   claims against Cardinal and Bent Glass are time-barred regardless of whether the UCC

17   applies.  Therefore, the court grants both Cardinal's and Bent Glass's summary judgment

18   motions with regard to Bendheim's breach of contract and breach of warranty claims.

19   **D.     Indemnity Claims**

20          Bendheim alleges claims for "all forms of indemnity and contribution" against

21   both Cardinal and Bent Glass.  (2d Am. 3d-Party Compl. ¶¶ 28-30.)  A right of implied

22   contractual indemnity "arises when one party incurs a liability the other party should

1  discharge by the nature of the relationship between the two parties." *Cent. Wash.*

2  *Refrigeration, Inc. v. Barbee*, 946 P.2d 760, 762 (Wash. 1997).  Although the right is not

3  present in every contractual relationship, "a contractual relationship under the U.C.C.,

4  with its implied warranties, provides sufficient basis for an implied indemnity claim

5  when the buyer incurs liability to a third party as a result of a defect in the goods which

6  would constitute a breach of the seller's implied or express warranties." *Id.* at 764.

7  "Likewise, a relationship where one party has expressly warranted its goods to another

8  party provides a sufficient basis for an implied indemnity claim." *Urban Dev. Inc. v.*

9  *Evergreen Bldg. Prod., LLC*, 59 P.3d 112, 116 (Wash. Ct. App. 2003), *aff'd sub nom.*,

10  *Fortune View Condo. Ass'n v. Fortune Star Dev. Co.,* 90 P.3d 1062 (Wash. 2004); *see*

11  *also* 42 C.J.S. Indemnity § 31, at 121 (1991) (cited in *Barbee*, and discussing implied

12  indemnity outside of the UCC context).  An action based on implied indemnity is an

13  equitable cause of action, separate from an underlying breach of contract cause of action.

14  *Barbee*, 946 P.2d at 762.  Accordingly, the statute of limitations for an indemnity claim is

15  not bound to the statute of limitations for the underlying contract claim, and does not

16  begin to run until a party pays damages to a third party, or becomes legally obligated to

17  do so.  *Id.* at 765.

18         1.   <u>Cardinal</u>

19         Cardinal contends that summary judgment is appropriate on Bendheim's

20  indemnity claim because Bendheim has not put forth evidence that it has been damaged.

21  (Cardinal Mot. at 16-17.)  Rather, Cardinal asserts, Bendheim has only alleged potential

22  damage that it might incur based on its liability to Williams; and Williams has not yet

1   quantified its damages to the owner.  (*Id.*)  Cardinal has not moved for summary

2   judgment on any other ground.

3       The court finds, viewing the evidence in the light most favorable to Bendheim,

4   that there are genuine issues of material fact regarding Bendheim's damages.  Williams

5   has made clear that it is seeking damages from Bendheim based on the delamination of

6   the glass at the NSR and based on Bendheim's provision of nonconforming glass.  (*See*

7   Williams Compl.; Mar. 2009 Jayson Decl. Ex. 7 at 7.)  Moreover, the court finds that

8   there is a genuine issue of material fact regarding who is responsible for the delaminating

9   glass.  First, Mr. Wick contends that evidence shows that Cardinal cut glass to size first,

10  hand-washed each piece of glass, and then laminated the glass.  (Apr. 2010 Wick Decl. ¶

11  5 & Ex. C; *see also* Apr. 2010 Pitkethly Decl. (Dkt. # 105) ¶¶ 6-7.)  Mr. Wick believes

12  that because Cardinal could not use its mechanized glass washing equipment, there was

13  contamination of the interlayer that contributed to the delamination.  (*Id.* ¶ 6.)  Second,

14  according to Mr. Wick, BGD provided only about 15 percent of the glass used at the

15  NSR, and according to KJI, 30 percent of the glass has delaminated.  (Mar. 2010 Wick

16  Decl. ¶ 12; Mar. 2009 Jayson Decl. Ex. 7 at 7.)  As a result, according to Bendheim,

17  Cardinal had to be responsible for at least half of the delaminating glass.  Bendheim asks

18  the court to compare apples and oranges, as the 15 percent figure for the percentage of

19  glass provided by Bent Glass is based on square footage, while the 30 percent figure is

20  based on the number of lites.  (*See id.*)  Regardless, having reviewed the extensive record

21  in this case, the court determines, viewing the facts in the light most favorable to

22  Bendheim, that there is a genuine issue of material fact regarding whether each vendor is

1    responsible for delamination of the glass, and if so, to what extent.  The court therefore

2    denies Cardinal's motion for summary judgment on Bendheim's indemnity claim.

3        2.    Bent Glass

4        Bent Glass contends that, under *Barbee*, Bendheim cannot establish that the

5    relationship between the parties is one that would lead to implied indemnity.  *Barbee*

6    states that "a contractual relationship under the U.C.C., with its implied warranties,

7    provides sufficient basis for an implied indemnity claim when the buyer incurs liability to

8    a third party as a result of a defect in the goods which would constitute a breach of the

9    seller's implied or express warranties."  *Barbee*, 946 P.2d at 764.  Bent Glass contends

10   that it only warranted against delamination of its glass within one year of manufacture

11   and that it disclaimed all implied warranties.  Thus, Bent Glass argues, because

12   Bendheim has presented no evidence that any of the glass delaminated within one year of

13   manufacture, there was no "defect in the goods which would constitute a breach of the

14   seller's implied or express warranties" as required for implied indemnity to lie.

15       Bendheim does not respond to this argument.  Instead, Bendheim quotes passages

16   from *Barbee* without relating them to the context of this case and points to no facts

17   which, viewed in its favor, would show that any of the glass delaminated within the

18   warranty period.  (*See* Resp. to Bent Glass Mot. at 12-13.)  Bendheim's sole argument

19   appears to be that the statute of limitations has not yet run on its indemnity claim, but

20   Bent Glass did not raise this challenge in its motion.  (*See id.* at 13.)  The court finds,

21   therefore, that Bendheim has not met its burden to establish a genuine issue of material

22

1    fact, and grants Bent Glass's motion for summary judgment on Bendheim's indemnity

2    claim.

3    **E.    Contribution Claims**

4           Bendheim alleges claims for contribution under RCW 4.22.040 against both

5    Cardinal and Bent Glass.  RCW 4.22.040 provides:

6           A right of contribution exists between or among two or more persons who
            are jointly and severally liable upon the same indivisible claim for the same
7           injury, death or harm, whether or not judgment has been recovered against
            all or any of them. . . . The basis for contribution among liable persons is
8           the comparative fault of each person  . . . .

9    RCW 4.22.040(1).

10          Cardinal contends that summary judgment is appropriate on Bendheim's

11   contribution claim on the sole ground that Bendheim has not established damages.[6]  (*See*

12   Cardinal Mot. at 16-17; Cardinal Reply at 2.)  As discussed above, the court finds,

13   viewing the evidence in the light most favorable to Bendheim, that there are genuine

14   issues of material fact regarding Bendheim's damages.  The court therefore denies

15   Cardinal's motion for summary judgment on Bendheim's contribution claim.

16          The court notes that it is not clear that RCW 4.22.040 applies to claims for breach

17   of contract and breach of warranty.  Even if RCW 4.22.040 does apply to the claims at

18   issue in this case, Bendheim does not appear to have alleged facts supporting a finding

19

20   _____

21          [6] Bent Glass, for its part, did not discuss Bendheim's contribution claim in its motion for
     summary judgment.  The court therefore makes no ruling regarding summary judgment on
22   Bendheim's claim for contribution against Bent Glass.

1  that it is jointly and severally liable with Cardinal and Bent Glass for the harm suffered

2  by Williams.  Bendheim will be required to clear these hurdles before trial.

3  **E.      Limitations of Liability**

4        Washington's UCC permits parties to a contract to agree to "limit or alter the

5  measure of damages recoverable under this Article, as by limiting the buyer's remedies to

6  return of the goods and repayment of the price or to repair and replacement of

7  nonconforming goods or parts."  RCW 62A.2-719(1).  This section also provides,

8  however, that "[w]here circumstances cause an exclusive or limited remedy to fail of its

9  essential purpose, remedy may be had as provided in this Title."  RCW 62A.2-719(2).

10  The Washington Supreme Court has applied the UCC by analogy to service contracts;

11  thus, the parties' disputes regarding whether the UCC governs their contracts does not

12  affect the court's analysis.  *Puget Sound Fin., LLC v. Unisearch, Inc.*, 47 P.3d 940, 946

13  n.14 (Wash. 2002).

14        Contractual limitations on damages are generally valid unless they are

15  unconscionable.  *M.A. Mortenson Co. v. Timberline Software Corp.*, 998 P.2d 305, 314

16  (Wash. 2002).  Limitations of liability for incidental and consequential damages in purely

17  commercial transactions are prima facie conscionable, and the burden of establishing

18  unconscionability falls on the party attacking the clause.  *Am. Nursery Prods., Inc. v.*

19  *Indian Wells Nursery*, 797 P.2d 477, 480-81 (Wash. 1990); *Puget Sound Fin.*, 47 P.3d at

20  944 n.12 (noting that exclusionary clauses and liability limitation clauses are subject to

21  the same analysis).  Bendheim does not contend that Cardinal's and Bent Glass's

22  limitations of liability in the warranty agreements were unconscionable.

1      1.   <u>Cardinal</u>

2      Cardinal contends that any liability it may have to Bendheim is limited to the

3  replacement cost of the glass, as provided in the warranty agreement between the parties.

4  Bendheim does not challenge this assertion.  Instead, Bendheim repeats the arguments it

5  made in its own motion seeking summary judgment limiting Williams's remedies, and

6  contends that, if the court grants Cardinal's motion for summary judgment on limitation

7  of liability, it must revise its Prior Order denying Bendheim's motion for summary

8  judgment against Williams.  To support this contention, Bendheim cites excerpts from

9  Mr. Wick's deposition in which he discussing his interpretation of the warranty

10  Bendheim made to Williams.  (*See* Resp. to Cardinal Mot. at 16-19 (quoting June 2009

11  Rosenberg Decl. (Dkt. # 54) Ex. 1).)

12      As Bendheim agrees with Cardinal that the language of the warranty is effective to

13  limit the buyer's remedies to those set forth in the warranty agreement, the court grants

14  Cardinal's motion for summary judgment regarding limitation of liability.  The court

15  declines, however, to modify its prior ruling denying Bendheim's motion for summary

16  judgment against Williams absent briefing from Williams.  Rather, Bendheim may make

17  a renewed motion for summary judgment based on the record in this case as it has

18  developed since the court's Prior Order.

19      2.   <u>Bent Glass</u>

20      Bent Glass also contends that its warranty was effective to limit its liability to

21  Bendheim.  Bent Glass's written warranty states that it warrants its laminated glass

22  products for "[one] year from date of manufacture against defects in material or

1  workmanship, which result in edge separation, let-goes, or delamination," and that the

2  buyer's remedies were limited to replacement of the glass or a refund of the purchase

3  price.  (Mar. 2010 Lerner Decl. Ex. A.)  Bent Glass asserts that, because there is no

4  evidence that any of its glass delaminated within one year of manufacture, it has no

5  liability to Bendheim.[7]

6          Bendheim does not directly respond to Bent Glass's arguments.  Instead, as it did

7  in its response to Cardinal's motion, Bendheim asserts that the court must deny Bent

8  Glass's motion because it denied Bendheim's motion for summary judgment regarding

9  its limitation of liability to Williams.  Bendheim again fails to recognize the factual

10  differences between its case against Bent Glass and Williams's case against it.  First,

11  there are critical differences between the Bent Glass-Bendheim warranty and the

12  Bendheim-Williams warranty.  The court denied Bendheim's motion for summary

13  judgment based on its determination that there was a dispute of material fact regarding

14  whether the term "laminated glass products ordered" in the Bendheim-Williams warranty

15  referred to laminated glass in general or specifically to glass laminated with SAFLEX.

16  (Prior Order at 9.)  As a result, the court could not determine on the record before it

17  whether the delivery of glass laminated with liquid resin caused the warranty to fail its

18  essential purpose.  (*Id.*)  Here, by contrast, Bent Glass's warranty covered "its laminated

19  glass products" for a period of one year from manufacture.  (Lerner Decl. Ex. A.)  Thus,

20

21          [7] The earliest cited evidence of delamination is a July 2004 telephone call from Scott

22  White of KJI to Mr. Wick in July 2004.  (Mar. 2009 Wick Decl. ¶ 37.)

1    the ambiguity the court found in the phrase "products ordered" in Bendheim's warranty,

2    when viewing the facts in the light most favorable to Williams, does not exist here.

3    Second, Bendheim presents no facts which, viewed in its favor, would support a finding

4    that circumstances caused the remedies in Bent Glass's warranty to fail their essential

5    purpose.[8]  Rather, Bent Glass relies solely on the court's discussion in its Prior Order of

6    Bendheim's warranty to Williams.  Because Bendheim has not met its burden to establish

7    a genuine issue of material fact, the court grants Bent Glass's motion for summary

8    judgment regarding limitation of liability.

9    **F.     Bendheim's Rule 54(b) Motion**

10             Bendheim contends that, to the extent the court grants summary judgment to

11   Cardinal in ruling on the instant motion, it should also grant its motion to modify the

12   court's Prior Order denying Bendheim's motion for summary judgment on Williams's

13   claims pursuant to Federal Rule of Civil Procedure 54(b).  Rule 54(b) provides, in

14   relevant part, that:

15             any order or other decision, however designated, that adjudicates fewer
               than all the claims or the rights and liabilities of fewer than all the parties
16             does not end the action as to any of the claims or parties and may be revised
               at any time before the entry of a judgment adjudicating all the claims and
17             all the parties' rights and liabilities.

18             As the court has explained above, there are important factual differences between

19   the Bendheim-Cardinal relationship and the Williams-Bendheim relationship.  Thus, it is

20   _____

21        [8] *Compare* Dkt. # 37 at 13-16 (Williams's response to Bendheim's motion for summary
     judgment) *with* Resp. to Bent Glass Mot. at 17-19.
22

ORDER- 28

neither inconsistent nor unfair for the court to grant Cardinal's motion for summary

judgment after denying Bendheim's motion.  Moreover, as the court's prior order

involved the dispute between Williams and Bendheim, rather than the dispute between

Bendheim and Cardinal, the court declines Bendheim's invitation to modify its Prior

Order absent briefing from Williams.  The court therefore denies Bendheim's Rule 54(b)

motion.

**G.      Bent Glass's Request for Attorneys' Fees**

        Bent Glass contends that it is entitled to an award of attorneys' fees pursuant to

Washington's long arm statute, which provides:

> In the event the defendant is personally served outside the state on causes
> of action enumerated in this section, and prevails in the action, there may
> be taxed and allowed to the defendant as part of the costs of defending the
> action a reasonable amount to be fixed by the court as attorneys' fees.

 RCW 4.28.185(5).  Bendheim does not respond to Bent Glass's request.

        The court denies Bent Glass's motion for attorneys' fees.  The statute authorizes

an award of reasonable attorneys' fees where the defendant "prevails in the action."  *Id.*;

*Scott Fetzer Co., Kirby Co. Div. v. Weeks*, 786 P.2d 265, 268 (Wash. 1990).  Here,

although Bent Glass has prevailed on the instant motion, it has not "prevail[ed] in the

action" because Bendheim's contribution claim still remains for trial.  The denial is

without prejudice against Bent Glass renewing its motion should it eventually prevail in

the action.

1

**III.    CONCLUSION**

2          For the foregoing reasons, the court GRANTS in part and DENIES in part

3 Cardinal's motion for summary judgment (Dkt. # 93) and GRANTS Bent Glass's motion

4 for summary judgment (Dkt. # 88).

5          Dated this 13th day of July, 2010.

6

7          _____

8          JAMES L. ROBART
           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22